The clause in the will that directly relates to the personal estate of the testator, which is the subject of the present controversy, is as follows: "My negroes I wish divided equally among my wife, Louisa, Nancy, Olivia, and the child of which my wife is pregnant, and in case of the death of either, that their share shall be equally divided among the survivors, and also the remaining parts of my estate."
In deciding upon this part of the will, I agree with my brethren, that the legatees took as tenants in common, and that the clause of survivorship by legal construction must be considered as having been added to prevent a lapse, in case any of the legatees should (132) die during the life of the testator.
In Maberly v. Strode, 3. Ves., 446, the chancellor says: "Words of survivorship, added to a tenancy in common in a will, are to be applied to the death of the testator, unless an intention to postpone the vesting is apparent." "It is true," says Lord Hardwick in Hawes v. Hawes, 1 Ves., 14, "this is certainly not a natural way of explaining the testator's intent, as one seldom provides by will for contingencies that are to happen in his life; but if no other reasonable construction can be found, the court may resort to this." And he approved of Lord Cowper's reasoning in Bindon v.Lord Suffolk, 1 P. Wms., 96, who adopted the same construction. It is certainly a more reasonable construction than one which would consign to poverty the issue of a legatee who might die after the testator, by causing the property to go to the survivors, instead of having vested it in the legatee, and becoming a support for such issue.
It is to avoid a similar evil that courts have frequently construed one word to mean another; as where an estate is given to a son, but if he dies before 21, or without issue, then over to another. Now, taking this devise literally, if the son had children, and died under the age of 21 years, the estate would go to the remainderman, and such children would be left unprovided for; for, as the father had lost the property, and could not make provision for them out of it, because he had not lived till 21, the remainderman would be entitled. To avoid this injustice, the courts have construed or as and, according to which construction the estate would not be divested out of the son, and the remainderman would not be entitled unless the son should die under 21 years of age and without issue. Such construction is so common that it is useless to cite authorities to prove it. *Page 112 
In the present case it might not be considered as going far out of the way to believe that the testator meant this: that if either of the legatees should die before (in common parlance) they got their legacy, or (133) before it vested in them, then the survivors should have it. However, the doctrine seems so well established that words of survivorship added to a tenancy in common are so construed as to prevent a lapse, and become inoperative at the death of the testator, that questions of that description may be considered as put to rest. Trotter v.Williams Prec. in ch. 78; Bindon v. Suffolk, 1 P. Wms. 96; Stringer v.Phillips, 1 Eq. Ca. Ab. 293; Rose v. Hill, 1 Burr, 1881; Roebuck v. Dean, 2 Ves., Jr., 265; Perry v. Woods, 3 id., 204; Russell v. Long, 4 id., 551;Brown v. Higgs, 5 id., 506; Brown v. Bigg, 7 id., 280; Shergold v. Boone, 13 id., 375; Webster v. Hale, 8 id., 410; Ommaney v. Bevan, 18 id., 292;Newton v. Ayscouch, 19 id., 535.
It is very true that there are some cases emanating from high authority which seem to look the other way. In Billings v. Sandon, 1 Bro., 393, a bequest was made of £ 1,000 to the testator's sister; and in case of her demise £ 800 was given to James and £ 200 to John Billings. Lord Thurlow held that the sister was entitled for life, and afterwards the legacy was to go over to James and John Billings. So also in the case of Nowlan v. Nelligan, 1 Bro., 489, the testator having a wife and daughter, devised as follows: "I give and devise to my beloved wife all my real and personal estate. I make no provision expressly for my dear daughter, knowing that it is my dear wife's happiness as well as mine to see her comfortably provided for, but in case of death happening to my said wife, in that case I hereby request my friends Staple and Hunter to take care of and manage to the best advantage for my lovely daughter, all and whatsoever I may die possessed of." In the first of these case, Lord Thurlow put a natural construction upon the will; because there was no injustice to be avoided nor great good to be answered by putting a legal or artificial construction upon it. With respect to the last case, it could not be intended that in case the wife survived the husband, her right to the legacy would be complete, because there was a trust and confidence reposed in the wife that she should provide for the daughter, which she could not execute until after the (134) death of the testator, and in case of death happening to her he substituted trustees to perform the trust. It is certain that a benefit was intended for the daughter after the mother's death, and that intention could only be carried into effect by allowing the mother a life estate.
In another case, Lord Douglas v. Chalmer, 2 Ves., Jr., 501, where a legacy was given to Lady Douglas, and in case of her death, to the use and behoof of her children, share and share alike, the chancellor thought the *Page 113 
natural construction was that the mother should take a life estate, and that the balance of the interest in the legacy should go to her children. In Cambridge v. Rous, 8 Ves., 12, legacies were given to two sisters, and in case of the death of either to devolve upon the other. The master of the rolls was of opinion that the contingency should be confirmed to the death of the testator, and that, afterwards, the legacies became vested. Here are two devises very much alike, and constructions very unlike each other put upon them. In the latter case the master of the rolls truly says that: "It is an incorrect expression to apply words of contingency to an event which is certain. A testator may mean the death of a legatee during his own life, or he may mean a death whenever it may happen. Accordingly, in every instance in which these words have been used, the courts have endeavored to collect from the nature and circumstances of the bequest, or the context of the will, in which of these two senses it is most likely this doubtful and ambiguous expression was employed." He says in another part of the same case that "Ordinarily in gifts between near relations, if any restraint is imposed upon the first taker, it is for the benefit of children." Upon this it may be remarked that parents are under a greater natural and moral obligation to provide for their offspring than collateral relations are under to provide for each other or for strangers. Hence, to carry the intent of testators into effect as to children, legal constructions are oftener resorted to than in the case of collaterals or strangers.
In the present case it must be taken that the testator's (135) ruling intent was to provide for his wife and children, except Lucy Drew. And this intent would be broken in upon, and the nature of the legacy and the context of the will disregarded, if only a life estate was given to the children, and they had not the power to provide for their issue, as I think will more fully appear by noticing other parts of the will, which are as follows: "To Lucy Drew, for the purpose of preventing her from inheriting any part of my estate, I give the sum of five shillings paper money. Besides, I here insert this article as a standing memorial, and to perpetuate to my descendants the abhorrence of her late union; that she has been to me an ungrateful and most undutiful child; that when I am no more, should she fall into any distress, my children will, I hope, unrelentingly say, The distress is just; she is only reaping the reward of her ingratitude." Again, in disposing of his real estate, he directs that if any of his children die without issue, it shall go to the other surviving children, Lucy Drew excepted. And in the clause which I have first noticed, in which he disposes of his personal *Page 114 
estate, he adds the following injunction: "provided in all cases, that Lucy Drew shall never inherit one stiver, in the case of the death of either of the above children."
From these clauses it appears that although the testator considered Lucy Drew to be a legal, component part of his blood, he also considered that the sin of ingratitude had transformed her into an excrescence, which he wished to lop off from his family. This is evident from repeated expressions of displeasure at her conduct. His great anxiety seems to have been to exclude her from participating in any part of his estate. There is no circumlocution in the devises or legacies. They are expressed in a pithy, laconic form. He seems to have been at no loss, either about the legatees or the quantum given to each. It was the common case of a father giving to his children. And had it not have been for his great excitement against Lucy Drew, we would probably read nothing in his will respecting survivors.
(136) In construing wills, the great fundamental rule is to catch the intent of the testator, and be governed by that, if there is no maxim or rule of law opposing it. Acting in this case under the influence of that salutary rule, and taking into view all the clauses of the will, I can see nothing that should confine the contingency of the death of any of the legatees to the life of the testator. I think it obvious that the insertion of the clause of survivorship was made for the purpose of disinheriting Lucy Drew. The clause was inserted more with that view than from any idea the testator had of preventing a lapse. I think, too, that it was not inserted for the purpose of confining the legatees to life estates, but that the legacies were intended to become vested at the death of the testator to all purposes but one; and that was, that if any of them died after the testator's death (or perhaps before it) without issue, and without having made any disposition of their legacy by will or otherwise, so that as in ordinary cases it would go to the next of kin, I say in such case the testator interposed and substituted the survivors in the place of the next of Kin, for the purpose of excluding Lucy Drew. The testator's great purpose was to fix a guard upon his property, and have it conducted into futurity beyond the limits of his own life, free from any claim she might otherwise have to it. And he has done so, I think, as far as the death of the last survivor. There he has taken leave of it. And if the last survivor should die intestate, and without issue, or without having made any disposition of it, Lucy Drew will come in for a share. He has created no barrier against her in such case. But she could take nothing upon the death of any preceding survivor similarly situated. This, I think, was the testator's intention; and I am not aware that it is opposed by any maxim or rule of law. *Page 115 
In the present case it appears that Louisa, one of the legatees, intermarried with David Clark, and thereby transferred her legacy to him. And although she is dead, Lucy Drew can take nothing as next of kin; and, of course, the clause creating the survivorship is inoperative.
Thus the testator having shut up all the avenues through which (137) which Lucy Drew could derive any benefit from his estate, until it might vest in the last survivor, and then, too, unless that survivor had died without issue, and without having made any disposition of it, his grand purpose was accomplished. Therefore, in either view I have taken of the case, whether upon the clause alone that disposes of the personal estate, or upon that clause connected with other clauses in the will, I am of opinion that the bill should be dismissed with costs.
PER CURIAM. Decree affirmed.
Cited: Haughton v. Lane, 38 N.C. 629; Carter v. Williams, 43 N.C. 183;Hilliard v. Kearney, 45 N.C. 234; Vass v. Freeman, 56 N.C. 223;Murchison v. Whitted, 87 N.C. 470; Buchanan v. Buchanan, 99 N.C. 314;Galloway v. Carter, 100 N.C. 121, 129; Campbell v. Cronly, 150 N.C. 468;Ryder v. Oates, 173 N.C. 575; Bank v. Murray, 175 N.C. 65.